UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
OCT 29 2009
CLERK

SHAYLENE MONTOYA,

Plaintiff,

vs.

CITY OF FLANDREAU, KEN JAMES, JUSTIN HOOPER, and SCOTT GAALSWYCK,

Defendants.

CIV 09-4156

VERIFIED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983, 42 USC 1985, and 42 USC 1988

STATE OF SOUTH DAKOTA)
:SS
COUNTY OF MINNEHAHA )

COMES NOW the Plaintiff, being first duly sworn, who for her Verified Complaint states and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the 4th and 14th Amendments of the Constitution of the United States and the provisions of 42 USC 1983, 1985, and 1988 of the United States Code.

2. The jurisdiction of this court is invoked under the provisions of 28 USC 1331, 1343, and 1367.

3. Venue is placed in this district under 28 USC 1391(b) because all the Defendants reside herein and the events complained of took place herein.

**PARTIES**

4. Plaintiff Shaylene Montoya, hereafter Shaylene, is now, and was at all times mentioned herein, a citizen of the United States of America and a Native American. She was, at the time of the events complained of, moving her residence from Flandreau, South Dakota, to Ogden, Utah.

5. Defendants Justin Hooper, hereafter Hooper, and Scott Gaalswyck, hereafter Gaalswyck, are now, and at all times mentioned herein were, duly appointed, employed, and acting

police officers of the city of Flandreau, Moody County, South Dakota and residents of that city and county. Defendants Hooper and Gaalswyck are being sued in their individual and official capacities.

6. Defendant Ken James, hereafter James, at all times material herein, the duly appointed and acting Chief of Police of Flandreau, Moody County, South Dakota, in charge of the training and discipline of Defendants Hooper and Gaalswyck. He is being sued in his individual and official capacity.

7. Defendant City of Flandreau is a duly incorporated and operating municipality located in Moody County, South Dakota and is responsible for the providing the training of Defendants Hooper and Gaalswyck.

8. Each of the Defendants, individually and in concert with the others, acted under pretense and color of law and their official capacity, but such acts were beyond the scope of their jurisdiction and without authorization of law. Each of the Defendants, individually and in concert with the others acted willfully, knowingly, and with the intent to deprive Shaylene of her rights to be free from illegal seizures of her body, and to due process and equal protection under the 4th and 14th Amendments to the Constitution of the United States and 42 USC 1983, 1985, and 1988.

**Cause of Action under 42 USC 1983**

9. Shaylene hereby incorporates paragraphs 1 through 8 above, inclusive, as though fully set forth.

10. On or about the 8th of November, 2006, Defendants Hooper and Gaalswyck responded to a verbal domestic disturbance at the residence of Robert Cournoyer in Flandreau, South Dakota.

11. The disturbance involved Shaylene and Robert Cournoyer, who had been living together before Shaylene moved out some time before and moved to Ogden, Utah. Shaylene was removing personal property of hers that she had left behind earlier. Shaylene was loud and clearly upset. Robert Cournoyer was urging Shaylene to hurry up with her moving because he had to be at work in 15 minutes.

12. Defendants Hooper and Gaalswyck talked Robert Cournoyer and Shaylene into calming down and agreeing not to continue their dispute by shouting.

13. Approximately 45 minutes to an hour later the Defendants Hooper and Gaalswyck were dispatched again to Robert Cournoyer's residence. Shaylene told Defendant Gaalswyck that Robert Cournoyer had threatened to take her children to the Yankton Sioux Reservation where she would be unable to contact them. Defendant Gaalswyck explained to Shaylene and Robert Cournoyer that such an action by Robert Cournoyer would be illegal. Shaylene was upset and crying because of Robert Cournoyer's threat.

14. As the situation calmed, Shaylene turned toward Robert Cournoyer, who was 10 feet away from her and raised her open hands above her head at which point Defendant Hooper swiped her leg and fell to the ground with her. At the time her leg was swiped her knee gave a loud pop, audible to witnesses.

15. Defendant Hooper fell on top of Shaylene as he swiped her leg.

16. At no time, including the leg swipe, did Shaylene ever kick or attempt to kick either Defendant Hooper or Defendant Gaalswyck; hit or attempt to hit Defendant Hooper or Defendant Gaalswyck; nor was she armed.

17. At the time her leg was swiped, Shaylene was not under arrest.

18. At the time her leg was swiped, Shaylene was too far from Robert Cornoyer to slap him or otherwise touch him.

19. Defendant Hooper attempted to perform the leg swipe without the aid of another officer.

20. A leg swipe was not taught to Defendant Hooper in any training he had received.

21. Defendants Hooper and Gaalswyck are both larger and more massive than Shaylene.

22. At no time did Robert Cournoyer feel threatened by Shaylene.

23. Shaylene was not trying to flee nor was she actively resisting arrest during the leg sweep or thereafter.

24. When Shaylene's knee popped during the leg swipe, her knee was severely injured by the swipe and fall to the ground.

25. Shaylene was unable to walk unassisted to the police car.

26. Not until she was in the police car was Shaylene put under arrest.

27. Shaylene was ultimately charged with misdemeanor assault against Robert Cournoyer, or in the alternative, disorderly conduct, and resisting arrest, all of which are misdemeanors.

28. In a court trial held April 13, 2007, Shaylene was found not guilty of assault against Robert Cournoyer and not guilty of resisting arrest, but guilty of disorderly conduct.

29. Defendants Hooper and Gaaslwyck conspired to make the leg sweep look like a legitimate and proper leg sweep through claiming that the leg sweep was accomplished by the two officers, Gaalswyck assisting Hopper, even though Gaalswyck's report mentions nothing about two officers being involved in the leg sweep take down.

30. The constitutional violations described above are part of a pattern of misconduct where there is essentially a complete failure to train the police force, or training so reckless or grossly negligent that future police misconduct is almost inevitable or substantially certain to occur, thereby making Defendant James and Defendant Flandreau liable also.

31. The pattern of misconduct and failure to train, or train so recklessly or grossly negligently is shown by the constitutional violations and use of excessive force in other cases and incidents involving the Flandreau Police Department, its Officers, and civilians.

32. As a direct and proximate result of the injury to Shaylene's knee, she has had to undergo substantial surgery and hospitalization to her damage in an amount in excess of $38,000.00.

33. As a further direct and proximate result of the injury to Shaylene's knee she will have to undergo further medical treatment, surgeries, and hospitalization in an amount in excess of $50,000.00.

34. Beyond, and in addition to the excessive and unnecessary force used upon Shaylene, her arrest for "resisting arrest" and "assault" on Robert Cournoyer was pretextual and false entitling her, in addition, to "violation damages" of at least $50,000.00 or such higher amount as a jury may decide is appropriate.

35. As a further direct and proximate result of the violation of Shaylene's constitutional rights under the 4th and 14th Amendments, she has suffered great humiliation, embarrassment, pain, suffering, emotional and mental distress, and estrangement from her children to her damage in the amount of $300,000.00.

36. Further the actions of the Defendants were willful, or so grossly negligent and reckless as to amount to willfulness; intentional, malicious, oppressive, or fraudulent thereby entitling Shaylene to punitive or exemplary damages to insure such conduct does not happen again, in the amount of $500,000.00.

**Cause of Action under 42 USC 1985**

37. Shaylene hereby incorporates paragraphs 1 through 36 above, inclusive, as though fully set forth.

38. Defendants conspired to deny Shaylene her rights under the 4th and 14th Amendments to the Constitution of the United States and to equal protection of the law because she was Native American.

39. Defendants Hooper and Gaalswyck were the active part of the conspiracy through their improper and excessively forceful leg sweep of Shaylene, and their attempt to make the leg sweep look like a legitimate leg sweep, even though it was unreasonable, unconstitutional, and uncalled for in the circumstances and additionally, through their

false and pretextual arrest of Shaylene for "assault" on Robert Cournoyer and "resisting arrest".

40. Defendants James and Flandreau were the passive part of the conspiracy through their acceptance of a pattern of conduct described above in paragraphs 30 and 31 and failure to train described above in paragraph s 30 and 31 that amounts to their condonation, ratification, and participation in such conduct against Native Americans, who are the sole victims described in paragraph 31, above.

41. As a direct and proximate result of the conspiracy of the Defendants to deprive Shaylene the equal protection of her rights under the 4th and 14th Amendments, she suffered the damages described in paragraphs 30 through 33 above, inclusive.

**Cause of Action under 42 USC 1988**

42. Shaylene hereby incorporates paragraphs 1 through 41 above, inclusive, as though full set forth.

43. The actions of the Defendants in denying Shaylene her rights under the 4th and 14th Amendments as set forth above, entitle her to her costs, disbursements, and attorneys fees under 42 USC 1988.

WHEREFORE, Shaylene prays for judgment against the Defendants, jointly and severally, as follows:

1. For a money judgment for past medical expenses of $38,000.00;
2. For a money judgment for future medical expenses as determined by the jury;
3. For a money judgment for violation damages of at least $50,000.00 or such higher amount as a jury may determine to be appropriate;
4. For a money judgment for humiliation, embarrassment, pain and suffering in the amount of $300,000.00;
5. For a money judgment for punitive or exemplary damages in the amount of $500,000.00
6. For her costs, disbursements, and attorney fees pursuant to 42 USC 1988; and
7. For such other and further relief as the court may deem proper and appropriate.

Shaylene Montoya

Shaylene Montoya, Plaintiff

Subscribed and sworn to before me
this 28 day of October 2009.

Kathryn [illegible]

Notary Public – South Dakota
My Commission Expires: 6-11-13
(SEAL)

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Cynthia J. Ahrendt
2101 West 41st Street, Suite 2000
Sioux Falls, SD 57105
(605) 331-5895
(605) 334-6630 (fax)
(605) 366-9132 (cell)
cahrendt@samplaw.com (e-mail)

Rick L. Ramstead
Crew & Crew
PO Box 2343
Sioux Falls, SD 57107-2343
(605) 335-5561
(605) 335-7621 (fax)
Rick@crewandcrew.com (e-mail)
Attorneys for Plaintiff