# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1787
_____

| | |
|---|---|
| Shaylene Montoya, | * |
| | * |
| Plaintiff - Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of South Dakota. |
| City of Flandreau; Ken James; | * |
| Justin Hooper; Scott Gaalswyk, | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted: October 18, 2011
Filed: February 23, 2012
_____

Before MURPHY, BYE, and SMITH, Circuit Judges.
_____

BYE, Circuit Judge.

     Shaylene Montoya brought an action under 42 U.S.C. § 1983 against two Flandreau police officers, the chief of police, and the City of Flandreau, alleging, among other claims, the officers used excessive force against her in violation of the Fourth and Fourteenth Amendments. The district court granted summary judgment in favor of the defendants on all claims, holding the officers did not violate Montoya's constitutional right and were therefore entitled to qualified immunity. On appeal, Montoya only challenges the district court's grant of summary judgment in favor of Officer Justin Hooper. We reverse.

I

At 3:11 p.m. on November 8, 2006, Robert Cournoyer called the Flandreau police department for assistance because of an argument he was having with his ex-girlfriend, Shaylene Montoya. The two had recently ended their relationship and, after moving to Utah, Montoya came back to take their son with her and to retrieve her belongings from Cournoyer's residence. In her deposition, Montoya testified the argument arose because Cournoyer threatened to take their son to the Yankton Sioux Reservation where she would be unable to contact him.

Officers Hooper and Gaalswyk responded to the call at 3:17 p.m. Upon their arrival, Cournoyer told them he wanted Montoya out of his house by 4:00 p.m. Montoya was "loud and clearly upset" about the situation, but calmed down after speaking with the officers. The officers remained at the residence for about fifteen minutes and as they were leaving, the officers told Montoya someone would be arrested if they had to come back.

About an hour later, Cournoyer again called the police. Officers Hooper and Gaalswyk responded to the call at 4:28 p.m. When the officers arrived, Montoya and Cournoyer were outside the residence, arguing. As expected, the parties have different accounts of what happened next. According to Montoya, she and Cournoyer, along with her mother, a friend of hers, and the two officers, were all standing in a circle. Cournoyer was standing between the two officers while she was standing opposite of them, at a distance of about ten to fifteen feet. Montoya explains the events as follows:

> [Cournoyer] and me were having words. I was looking over to my left and I'm thinking we were in a circle. [The officers] said, they stated that I took a step forward and raised my fist. I would like to say that when I do talk, I use my hands in motion to express myself.
> . . .

> [Officer Hooper] came and took my left arm. Put it behind my back [and handcuffed my left wrist]. At that time [Officer] Gaalswyk came over to my right side and attempted to get my right arm behind. Stated quit or stop resisting. Then [Officer] Hooper came around with his right leg. Kicked my left leg. In turn, I fell straight to the ground forward. . . . Face first. [Officer Hooper] fell on top of me. Then I immediately screamed . . . [a]nd said my leg is broke[n].

Montoya started crying due to the pain, at which point Officer Gaalswyk asked her if she needed an ambulance. She responded she could not afford it. Nevertheless, Officer Gaalswyk helped Montoya off the ground and assisted her to the patrol car, which was to take her to a hospital. En route to the hospital, the officers informed Montoya she was under arrest and advised her of her rights. Then, after dropping Officer Hooper off at another patrol car, Officer Gaalswyk took Montoya to the hospital.

At the hospital, medical personnel took x-rays of Montoya's leg, the results of which revealed a tibial plateau fracture on the left knee. She was subsequently transferred to a different hospital for further orthopedic evaluation. Ultimately, Montoya had to undergo surgery for the injuries she sustained during her arrest. For four to five months following the surgery, Montoya could only walk with the help of crutches, after which she also had to undergo weeks of physical therapy.

According to Officer Hooper's account of the incident, as Montoya and Cournoyer were arguing, Montoya raised her right hand in a fist and took a step forward toward Cournoyer. Concerned about Cournoyer's safety, Officer Hooper grabbed Montoya's left arm, put it behind her back, and placed a handcuff on her left wrist. Montoya resisted and tucked her right arm under her stomach. Officer Gaalswyk grabbed her right arm and tried to place it behind her back. When she continued to resist, Officer Hooper performed the so-called "leg sweep," sweeping her left leg with his right leg, and causing her to fall to the ground. Officer Hooper then placed the other handcuff on her right wrist.

Montoya was charged with one count of simple assault or, in the alternative, disorderly conduct, and one count of resisting arrest. Following a bench trial, the court found Montoya not guilty on the simple assault and resisting arrest charges. The court reasoned the distance between Montoya and Cournoyer indicated she did not have the actual ability to cause any injury to him. The court further explained even if Montoya was in fact resisting arrest, she lacked the intent to create a substantial risk of causing physical injury, as required by statute. However, concluding Montoya's overall actions amounted to serious public inconvenience and annoyance to Cournoyer, the court found Montoya guilty of disorderly conduct.

In October 2009, Montoya filed suit against Officers Hooper and Gaalswyk, as well as the chief of police of the Flandreau Police Department and the City of Flandreau. All defendants moved jointly for summary judgment on all claims, asserting qualified immunity on Montoya's § 1983 constitutional claim. As relevant for purposes of this appeal, the district court concluded the force used by Officer Hooper was objectively reasonable as a matter of law, entitling him to qualified immunity. Montoya appeals.

II

We review *de novo* the district court's grant of summary judgment, "viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). Summary judgment is proper if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Johnson v. Carroll, 658 F.3d 819, 825 (8th Cir. 2011); Fed. R. Civ. P. 56(a).

A

Montoya asserts the district court erred in finding no genuine issues of material fact existed as to whether Officer Hooper violated her constitutional right to be free from excessive force.

We evaluate Montoya's claim of excessive force under the reasonableness standard of the Fourth Amendment. McKenney v. Harrison, 635 F.3d 354, 359 (8th Cir. 2011). The test for establishing a constitutional violation under the Fourth Amendment's right to be free from excessive force is "whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). "We determine whether a use of force was reasonable by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." McKenney, 635 F.3d at 359 (internal quotation marks and citation omitted). Further, in reviewing whether the use of force was reasonable, we consider "the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009). The degree of injury suffered, to the extent "it tends to show the amount and type of force used," is also relevant to our excessive force inquiry. Chambers, 641 F.3d at 906. And while "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment," Cook, 582 F.3d at 849, we have repeatedly acknowledged "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public," Brown, 574 F.3d at 499.

The district court appears to have credited Officer Hooper's account of the incident in concluding the force used against Montoya was objectively reasonable under the circumstances. Finding Montoya was violating a disorderly conduct statute

-5-

at the time Officer Hooper began the arrest and further noting she attempted to resist the arrest by "moving her right arm away," the district court determined Officer Hooper was justified in performing the "leg sweep." D. Ct. Order of March 15, 2011, at 11. To be sure, the district court did state "Montoya's gesture of the hands raised above the head may have been in frustration" and acknowledged she was at a distance "where she would have had to take some steps in order to strike Cournoyer." Id. Yet, it concluded the force used by Officer Hooper was objectively reasonable under the circumstances because "a rapidly evolving domestic dispute was ongoing and the conduct of Montoya had resulted in Cournoyer making two separate calls to the police." Id. at 10-11. We disagree.

Viewing the record and drawing all reasonable inferences in the light most favorable to Montoya, while simultaneously viewing the facts from the perspective of "a reasonable officer on the scene[,]" we cannot say Officer Hooper's use of force was objectively reasonable as a matter of law. Shannon v. Koehler, 616 F.3d 855, 863 (8th Cir. 2010). The evidence shows Montoya was standing ten to fifteen feet away from Cournoyer when she raised her hands above her head in frustration. She asserts she did not intend to hit Cournoyer, and Cournoyer testified he did not feel threatened by her actions. Additionally, nothing in the record indicates Montoya threatened or posed any threat to the safety of the officers. See Nance v. Sammis, 586 F.3d 604, 610 (8th Cir. 2009) (stating objective reasonableness depends on the totality of the circumstances, including whether plaintiff posed an "immediate threat to the safety of the officers or others"). Thus, at the time Officer Hooper performed the "leg sweep," Montoya was not threatening anyone, was not actively resisting arrest, and was not attempting to flee. At most, her actions amounted to a violation of a law restricting disorderly conduct, a misdemeanor punishable by no more than thirty days' imprisonment, a fine of five hundred dollars, or both. See S.D. Codified Laws §§ 22-18-35 (defining disorderly conduct as a Class 2 misdemeanor) and 22-6-2(2) (providing the penalties for a Class 2 misdemeanors); see also Brown, 574 F.3d at 496 (explaining circumstances relevant to whether the use of force was objectively

reasonable include the severity of the crime at issue and holding force is least justified against nonviolent misdemeanants). Moreover, although not dispositive, the severity of the injuries she sustained is a relevant factor in determining the reasonableness of the force used, see Rohrbough v. Hall, 586 F.3d 582, 586 (8th Cir. 2009), and we cannot agree with the district court the fact Montoya sustained a broken leg is simply an "unfortunate" and "unintended" consequence of what the court described as objectively reasonable use of force by Officer Hooper. See, e.g., Shannon, 616 F.3d at 863 ("Assuming, then, that [Appellant's] story is true—*i.e.*, assuming he was not threatening anyone, not resisting arrest, and so on—it was not reasonable for [the] [o]fficer [] to use more than de minimus force[.]").

Based on the physical distance between Montoya and Cournoyer at the time of the incident (ten to fifteen feet), the nature of the crime at issue (disorderly conduct), and the degree of the injury suffered (a broken leg), we cannot say the force used by Officer Hooper was objectively reasonable as a matter of law. Accepting Montoya's version of events as true, as we must under the present procedural posture, we conclude genuine issues of material fact exists as to whether Officer Hooper used excessive force against Montoya. While a jury may credit Officer Hooper's characterization of the incident and disbelieve Montoya at trial, "it is not our function to remove the credibility assessment from the jury." Henderson v. Munn, 439 F.3d 497, 504 (8th Cir. 2006).

B

Montoya further asserts the district court erred in concluding Officer Hooper was entitled to qualified immunity. "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown, 574 F.3d at 495. To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts which, when construed

-7-

in the light most favorable to her, show (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the violation. McKenney, 635 F.3d at 358.

Finding Officer Hooper's use of force was objectively reasonable as a matter of law, the district court concluded Montoya failed to establish a violation of a constitutional right, entitling Officer Hooper to qualified immunity on her § 1983 claim. For the reasons stated above, however, the district court erred in concluding, as a matter of law, Officer Hooper did not violate Montoya's constitutional right to be free from excessive force. Viewing the record in the light most favorable to Montoya, as we must at this stage, we conclude she alleged sufficient facts to show a constitutional violation of her rights.

We further conclude the constitutional right Officer Hooper allegedly violated was clearly established at the time of the misconduct, as required by the second prong of the qualified immunity analysis. We have consistently held "[t]he right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010) (internal quotation marks and citation omitted). However, we have also explained "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Shannon, 616 F.3d at 864 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Assuming once again Montoya's story is true, the contours of the right at issue were sufficiently clear to inform a reasonable officer in Officer Hooper's position it was unlawful for him to perform a "leg sweep" and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee. See Brown, 574 F.3d at 499 ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or

actively resist arrest and pose little or no threat to the security of the officers or the public.").

Therefore, we also reverse the district court's grant of summary judgment on qualified immunity grounds.

### III

Accordingly, we reverse the district court's grant of summary judgment in favor of Officer Hooper and remand for further proceedings consistent with this opinion.

_____

-9-